## Gulf, Colorado & Santa Fe Railway Co. v. James M. Newell.

### No. 2693.

1. **Railroad Companies—Purchases.**—A railway company by buying the stock of another and by buying the corporate franchise and property of the other, it having the power to buy, only becomes the owner of such franchise and property.

2. **Consolidation of Railroad Companies.**—Ownership alone does not operate a consolidation of that bought, with the purchaser. This can not be made without consent of the State, which will not be implied; nor can it be made without the consent of the stockholders of the companies to be consolidated.

3. **Sale of Franchise does not Affect the Corporate Existence.**—While an execution sale of the franchise and property of a railway company conveys the franchise and property to the purchaser, still the corporate existence of the sold out company remains.

4. **Relations of Railway Company to Public.**—A railway company in whomsoever may be its ownership stands charged with every duty and obligation to the public imposed upon it by its charter and the nature of its business. From these obligations it can not escape save by consent of the State.

5. **Continuous Obligations in Charter.**—If a railway charter imposes obligations continuous and in which individuals as distinguished from the public have an interest, then such obligations would rest upon any subsequent owner.

6. **Contract by Railway for Locality of a Depot.**—The Central & Montgomery Railway Company made a valid contract to maintain its depot within one thousand yards of the court house in Montgomery. After the sale of its franchise, etc., at sheriff sale, the purchasing company moved the depot. The plaintiff alleged as cause of action that the defendant, the purchaser at the execution sale, was liable. *Held:*

1. The acquisition at the execution sale took the property and franchise freed from all liability save as secured by prior lien.

2. The contract was one personal in its character, and which could not fix any obligation whatever upon appellant, the purchaser

3. The refusal to perform the contract would give no cause of action.

7. **Estoppel.**—The subsequent purchase, etc., can not be held as an estoppel to deny a consolidation between the two railway companies.

APPEAL from Montgomery. Tried below before Hon. James Masterson.

The opinion states the case.

*J. W. Terry,* for appellant.—1. The purchaser of the property of a corporation, whether at a judicial or private sale, does not assume the obligations or contracts of such corporation, and is not bound to perform the contracts of such corporation unless they be of such nature as to constitute a lien on the property purchased; and in this case the allegations of the answer show that appellant made the purchase with the express understanding that the property should be free from all such obligations; nor does such purchase operate as a merger or consolidation of the two companies. Wait on In. Corp., sec. 428; 2 Rorer on Railroads, 79, 91, 36, 37; Mora. on Corp., secs. 335, 420; Sappington v. Railway Co., 37 Ark., 23; H. & T. C. Ry. Co. v. Shirley, 54 Texas, 137, 138, 144–147; Powell v. Railway, 42 Mo., 63, 67; Branson v. Oregonian Ry. Co., 16 Am. and Eng. R. R. Cases, 518; Cook v. Railway Co., 9 Am. and Eng. R. R. Cases, 444; Cort v. Railway, 43 Mich., 43; Wright v. M. & St. P. Ry., 25 Wis., 51; Railway Co. v. Judge, 11 Am. and Eng. R. R. Cases, 584; Rich v. N. Y. Cent., Id., 600; City v. M. & N. Ry., 5 Id., 30; Hammond v. Railway, 16 S. C., 557, and 15 S. C., 10.

2. By its purchase of the property under the judgement and execution against the Central & Montgomery Railway Company the appellant acquired title to the property free from all contracts of the Central & Montgomery Railway Company which were not liens upon the same. The contract sued upon not being a lien upon the property, the appellant is not liable to the appellee on account of its possession of the property. H. & T. C. Ry. Co. v. Shirley, 54 Texas, 137, 138, 144, 147; C. O. & S. Ry. v. Greist, 30 Am. and Eng. R. R. Cases, 149, and cases cited in note, p. 155.

*W. P. McComb,* for appellee.—1. A railway corporation which by virtue of its invalid but voluntary and secret transactions with another railway corporation unlawfully assumes the ownership of the latter, usurping all its corporate rights and functions and operating its railroad, and thereby excluding it from any actual right or apparent existence as a corporation, whether such transactions are valid or not as to and between such corporations themselves, they must as to creditors of the retiring and apparently defunct corporation be regarded as a voluntary consolidation of the two companies, and the former is estopped from denying or repudiating its liability to the creditors of the latter. G. C. & S. F. Ry. Co. v. Hutcheson et al., 3 Wills. Con. Rep., sec. 97, and authorities there cited; C. & M. Ry. Co. v. Morris, 68 Texas, 49; 67 Texas, 692.

2. A consolidated corporation assumes the liabilities of its constituents, and if a corporation assumes and takes possession and control of the property of another like corporation and uses it in such manner and under such circumstances and pretensions as to be estopped as to the creditors of such corporation from denying that such corporation has

been voluntarily consolidated with it, it is liable for its breach of a contract theretofore made by such retiring corporation affecting the manner of the use of the property which it so takes, uses, and controls.

Stayton, Chief Justice.—Appellee brought this action against the Gulf, Colorado & Santa Fe Railway Company to recover damages for the breach of a contract which he alleges the Central & Montgomery Railway Company made with him and other residents of the town of Montgomery in the year 1879.

He alleged that this contract was evidenced by a subscription list the caption of which provided that in consideration the subscribers would pay the sums each subscribed, the Central & Montgomery Railway Company would establish, build, and maintain permanently its depot at some point within one thousand yards of the court house in the town of Montgomery; and that he subscribed and paid to the railway company the sum of one hundred dollars.

He further alleged that in compliance with this contract the Central & Montgomery Railway Company in the year 1879 did construct and maintain its depot within the named distance from the court house, where it remained until about September, 1885, but that about the month of June, 1882, the Central & Montgomery Railway Company ceased to control and operate its railway and to exercise its rights and franchises, which passed into the possession and control of appellant under some contract, pretended purchase, or by usurpation, and that since that date appellant has continuously managed and controlled the railroad property and franchises of the other railway company.

He further alleged that about the month of September, 1885, appellant, in violation of the contract between himself and other citizens of the town of Montgomery and the Central & Montgomery Railway Company, established a depot at a point more than one thousand yards from the court house in the town of Montgomery, where it has since transacted its business, abandoning the depot formerly established and used; that after making the contract on which he sues he bought property in the town of Montgomery, which has been greatly depreciated in value by the removal of the depot; and for damages thus sustained he brings this action based on the contract before referred to.

There is no averment that the two railway companies have been voluntarily or involuntarily consolidated or amalgamated, nor is there any averment from which this can be inferred, or from which it can be inferred that the Central & Montgomery Railway Company is not an existing corporation, clothed with all the rights, powers, and franchises it ever possessed.

Appellant filed demurrers to the petition, which are as follows:

1. "The defendant excepts to the plaintiff's petition, and says that it

appears therefrom that the Central and Montgomery Railway Company is a proper and necessary party defendant in this case and this action ought not to proceed without said company is a party."

2. "For further exception to said petition defendant says that the same states no facts which show or tend to show that the defendant is liable on the contract or breach of contract alleged to have been made with the Central and Montgomery Railway Company."

These demurrers were overruled and this ruling is assigned as error.

Appellant pleaded general denial, and by special answer alleged in substance that for a valuable consideration it purchased from George Sealy, who was the sole stockholder in the Central & Montgomery Railway Company, all of its bonds having been paid off and destroyed, the Central & Montgomery Railway free from all debts—stock, bonds, or otherwise; that upon the faith of such purchase its officers took possession of the road and operated the same under color thereof until September 6, 1887; that it had no notice of appellee's contract and never in any manner assumed the obligations of the Central & Montgomery Railway Company; that on September 6, 1887, it purchased at sheriff s sale, under a valid judgment, execution, and levy (which are particularly described), the entire road bed, track, franchises, and charter of the Central & Montgomery Railway Company, its right of way, and depot grounds, being its entire line from Navasota to Montgomery, to all of which on the same day the sheriff executed and delivered to it a deed in due form of law; that all acts of its officers in the premises down to September 6, 1887, were *ultra vires*, and that on that day by said purchase and sheriff's sale it acquired the property free from all claims against the Central & Montgomory Railway Company which were not liens on the same prior to the said judgment.

Demurrers to the special answer were sustained, and this ruling is assigned as error.

These rulings present the main questions to be determined in the case.

If giving to the petition the broadest intendments possible under its averments there could be doubt as to the true relations between the two railway companies, the answer would have left no ground for controversy as to this; and if, looking to the entire pleadings of both parties, admitting the averments of both to be true for the purposes of the demurrers, it appears that the plaintiff showed no right to maintain this action against appellant on the contract of the other railway company, then the judgment must be reversed.

The relation of appellant to the Central & Montgomery Railway Company, under the purchase from George Sealy, was considered in Railway Co. v. Morris, 67 Texas, 696, wherein it was held that the title to the Central & Montgomery Railroad and its franchises did not pass to appellant through that transaction, and that its corporate existence continued.

The purchase at sheriff's sale, set up in the answer, if it be conceded that appellant had power to buy, did not destroy the corporate existence of the Central & Montgomery Railway Company, but vested in appellant the franchise and corporate property sold, freed from liability for existing debts not secured by prior liens, and from all obligations of that company strictly personal in character.

The appellant at most became the owner of the corporate franchise of the Central & Montgomery Railway Company and of the property sold, just as would any individual who might have purchased at the sheriff's sale.

Ownership alone does not operate a consolidation, for this can not be made without the consent of the State, which will not be implied; nor can it be made without the consent of the stockholders of the companies to be consolidated. Pearce v. Railroad Co., 21 Howard, 442; State v. Bailey, 16 Ind., 46; Tuttle v. Railroad Co., 35 Mich., 247; Mourey v. Railroad Co., 4 Bissell, 78; Turnpike Co. v. Barnes, 42 Ind., 498; Bishop v. Brainerd, 28 Conn., 288; Taylor's Law of Corp., 419, *et seq.;* Mora. on Corp., 544; Rorer on Railroads, 588; Railroad Co. v. Shirley, 54 Texas, 125; Railroad Co. v. Fryer, 56 Texas, 609; Clinch v. Corporation, 4 L. R. Ch. App., 118; Dongan's Case, 8 L. R. Ch. App., 540.

There being no consolidation alleged it is unnecessary to consider whether or not had there been the consolidated company would be liable on the contract made the basis of this action.

The statute provides that "In case of the sale of the entire road bed, track, franchise, and chartered right of a railroad company, whether by virtue of an execution, order of sale, deed of trust, or any other power, the purchaser or purchasers at such sale and their associates shall be entitled to have and exercise all the powers, privileges, and franchises granted to said company by its charter or by virtue of the general laws; and the said purchaser or purchasers and their associates *shall be deemed and taken to be the true owners of said charter and corporators under the same, and vested with all the powers, rights, privileges, and benefits thereof in the same manner and to the same extent as if they were the original corporators of said company, and shall have power to construct, complete, equip, and work the road upon the same terms and under the same conditions and restrictions as are imposed by the charter and the general laws.*" Rev. Stats., art. 4260.

By the sale made by the sheriff there was a change made in the ownership of the Central & Montgomery Railroad, and of its franchise, but the corporate existence continues with franchise neither enlarged nor restricted, as before.

A railway company, in whomsoever may be its ownership, stands charged with every duty and obligation to the public imposed upon it by its charter and the nature of its business, and from those it can not escape without legislative permission so long as its corporate existence continues. If it

leases its road or otherwise permits it to be controlled and operated by another corporation without lawful authority it will remain liable for any breach of duty to the public as fully as though its road was operated under the control of its own directory, while at the same time the same liability may exist on the part of the corporation operating its road.

If its charter imposes upon it obligations and responsibilities continuous in their nature, in the discharge of which individuals, as distinguished from the public, have an interest, then such duties and obligations rest upon it in the hands of whomsoever may become the owner of its property and franchise; and such subsequent owner would be bound by any covenant running with the property purchased.

A person or corporation, however, who acquires the property and franchise of a railway corporation through sale under execution, takes it freed from all liability for its former indebtedness not secured by prior lien, and from all mere personal obligations assumed by the former owner.

That appellant is not liable on the contract made the basis of this action under the averments of the pleadings seems to us clear. The contract was one personal in its character, which could not fix any obligation whatever on appellant. City of Waukesha v. Railway Co., 52 Wis., 420; Wright v. Railway Co., 25 Wis., 46; Sappington v. Railway Co., 37 Ark., 23; Tawas v. Judge, 44 Mich., 479; Hammond v. Railway Co., 16 S. C., 573.

If the contract sued upon has not become binding on appellant we do not see that its refusal to comply with it gives cause of action either on the contract or for tort against it, for there is no privity between them nor duty raised by the contract.

It is urged that appellant is estopped to deny the fact of consolidation. We do not see on what ground an estoppel can be based. Appellant has done no act which in any manner influenced appellee to make the contract on which he relies, believing that it was bound to execute it.

It claims at most to be the owner of the railway and franchise of the corporation known as the Central & Montgomery Railroad Company, and by virtue of such ownership claims the right to operate and control that property and franchise, which, if it be such owner, it may lawfully do without consolidation and can not lawfully do as a consolidated corporation under the averments of the petition.

It is unnecessary to inquire whether appellee under the contract alleged has cause of action against the representatives of the interests of those interested in the assets of the sold out company.

The demurrer to the petition should have been sustained and the demurrers to the answer should have been overruled, and for the errors in the ruling of the court below in these respects the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 19, 1889.