## CHARLES DILLINGHAM, RECEIVER, AND HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v. ADDIE E. KELLY.

### No. 595.

1. **Liability of Purchaser of Railway from a Receiver.**—January 18, 1889, the receiver, under order of the United States Circuit Court, conveyed to Olcott the Houston & Texas Central Railway, but by virtue of certain restraining orders fiom that Court, retained possession of the road until April 10, 1893, when he delivered the same to the Houston & Texas Central Railway Company, which had on the 1st of April, 1890, purchased the road from Olcott. During the time the road was in the hands of the receiver, half a million dollars of its earnings had been expended in betterments. January, 1893, Kelly, a brakeman, was killed in a wreck on said road, and in February, 1893, his widow sued the receiver and the Houston & Texas Central Railway Company for damages. *Held*, that the following charge should have been given: "The undisputed evidence shows that the defendant, the Houston & Texas Central Railway Company, and all its rights and franchises, were sold to Frederic P. Olcott, and that said orders and decrees in said court (the United States Circuit Court) conveyed said property to the said Olcott without incumbrance and clear of all debts and incumbrances; and it further appearing that said court had exclusive jurisdiction of the case in which said orders were entered, and that all parties having claims against the property or funds in the hands of said court were required to intervene by petition in said cause on or before the 3rd day of October, 1893, and the evidence shows that plaintiff did not intervene in said cause, and you will find a verdict for the defendant."

2. **Effect of a Sale of the Road.**—Under the general rules of law as administered in the courts of equity, a railroad corporation is not liable for damages sustained by the negligence of the receiver while operating the road, except when the road is returned without sale to its owner, with improvements made thereon by the receiver out of the earnings of the road while in his possession. If there be a sale of the property under the decree of the court, the purchaser takes it, together with whatever improvements may have been made by the receiver, free from all charges or burdens, except such as may have been imposed by the decree, or such as may have existed prior thereto.

3. **Jurisdiction of Circuit Court—Plaintiff's Remedy.**—The Circuit Court in which the receivership was pending had exclusive jurisdiction of the property and assets of the railway company. The Act of Congress of 1887-1888 permits a receiver to be sued in any other court without first obtaining permission from the court where the receivership is pending, but provides that the latter court is not to be deprived of or impeded in the exercise of its equity jurisdiction and powers; and that court having provided for the payment of all just claims against either the receiver or the road, or its property, and required all persons having claims to present them to that court within a reasonable time, the plaintiff should have applied there.

4. **Receivers' Act of 1889.**—The Act of the Legislature of Texas of 1889, known as the "receivers' act," has no application to receivers appointed by the federal court.

5. **Can the Road be Made Liable.**—If the plaintiff could by proper pleadings show that the road was not in fact sold to Olcott, that he was only the ostensible purchaser, but was the agent of the company to receive its property from the receiver through the guise of a sale under judicial decree, and betterments made subsequent to the purchase are shown, could it be made liable? The question left undecided.

ERROR from Washington. Tried below before Hon. EDWARD R. SINKS.

*O. T. Holt,* for plaintiffs in error.—1. The court erred in refusing to give charge number 3, asked by defendant, which is as follows. [Copied in the opinion.]

The decree of foreclosure under which Frederic P. Olcott acquired the property of the Houston & Texas Central Railway Company, and the decree of confirmation thereunder, expressly relieved and discharged the property and the purchaser thereof from any and all liability of any and all kind and character, except such as in said decree of foreclosure was specially mentioned. It was stipulated in the decree and adjudged, that upon the purchaser paying the specified and stipulated consideration for said property, the purchaser and property should not be burdened with the character of claims of the defendant in error in this case. Said decree expressly relieved said purchaser and property from all claims of the character of the defendant in error, who failed to intervene in said cause on or before the 1st day of October, 1893; and the defendant in error having failed to intervene, as in said decree directed and provided, her claim was barred by lapse of time. Olcott v. Headrick, 141 U. S., 543.

All should be presented to the court for allowance: Jesup v. Railway, 44 Fed. Rep., 663; Gluck & Becker on Receivers, p. 422.

2. A court of equity in whose possession property is being foreclosed has the power and authority to decree that the purchaser shall take such property free from all claims except such as shall be established in said court, and may lawfully prescribe the time within which all persons having claims against such trust fund shall file and present the claim. The action is one in rem. Coal Co. v. McCreery, 141 U. S., 475; Iron Co. v. Car Works, 53 Fed. Rep., 853; Gluck & Becker on Receivers, p. 420.

*Campbell & Pennington,* for defendant in error.—The receiver, Chas. Dillingham, was operating the road at the time of the accident, under order of the United States Circuit Court, for the benefit of the Houston & Texas Central Railroad Company, and judgment was properly rendered against the defendant company. Railway v. Johnson, 76 Texas, 421; Railway v. Johnson, 151 U. S., 81.

PLEASANTS, ASSOCIATE JUSTICE.—On the 26th of May, 1886, by an order of the Circuit Court of the United States for the Eastern District of Texas, sitting at Galveston, in consolidated cause number 198, in equity, then pending in said court, entitled Nelson S. Easton and James Rintoul, Trustees, and the Farmers' Loan and Trust Company, Trustee, v. The Houston and Texas Central Railway Company, Nelson S. Easton, James Rintoul, and Charles Dillingham were appointed joint receivers in said cause of all the railroad's property and assets of said company; and on the 4th of May, 1888, said court rendered a final judgment in said cause, and a decree foreclosing certain mortgages sought to be foreclosed by the complainants in said cause upon

the property of said railway company; and by said final judgment and decree, the aforesaid Charles Dillingham was authorized and required to sell at the time and in the manner, and upon the terms and conditions in said decree specified and provided, all and singular the properties, rights, and franchises of said railway company; and by said decree, it was ordered that the said commissioner, the said Dillingham, should by deed duly executed convey to the purchaser the property sold to him, and that the purchaser should possess and hold the same, and all the rights, privileges, immunities, and franchises appertaining thereto, as fully and completely as said property, with all rights, privileges, and franchises incident thereto, was then held and enjoyed by said Houston & Texas Central Railway; and as was held and enjoyed by said company at the time of the execution of said mortgages, subject only to the payment of such amounts of money as said court might decree in any suit or suits of intervention filed in said cause, to be a charge on said property. In pursuance of said decree, the said commissioner, on or about the 8th of September, 1888, sold said property to Frederic P. Olcott, and which said sale, upon due report being made thereof, was in all things ratified and confirmed by said Circuit Court on the 20th of October, 1888, and the said commissioner ordered to make conveyance of the said property in accordance with the terms and provisions of the decree of foreclosure; and on the 18th of January, 1889, the said commissioner made and delivered to said Olcott deeds conveying to him all and singular the roads, property, and franchises and assets of said railway company by him purchased at said sale. And in August, 1889, the said purchaser, as was his right under the laws of the State, formed and created the railroad corporation, the Houston & Texas Central Railway Company, the defendant herein; and on the 1st of April, 1890, the said Olcott sold said railroad and its property and franchises to said company; and said Dillingham, the then sole receiver of said railroad and its properties (the said Nelson S. Easton and James Rintoul having been, by an order of said court previously made, relieved from their appointment as joint receivers with said Dillingham), was ordered to turn over the property by him held as receiver of said railroad to the said Frederic P. Olcott or his assigns, to be received by them, the said Olcott or his assigns, charged with such liabilities as should be fixed and determined by said court upon pleas of intervention filed in said court prior to the decree of foreclosure, and also such liabilities as might be determined by the court to have been incurred by said receiver or receivers. But said property was not turned over by said Olcott or his assigns, but said receiver retained possession and control thereof until the 10th of April, 1893, by virtue of two certain restraining orders made and entered in said court on the 12th of December, 1892, and on the 13th of March, 1893, in a case pending in said court, entitled S. W. Carey et al. v. The Houston & Texas Central Railroad Company. On the 10th of April, 1893, by virtue of an order then made and entered in said Cir-

cuit Court, the said Dillingham delivered to the defendant, The Houston & Texas Central Railroad Company, the property purchased by the said Olcott, and by him sold to said company. During the time the said railroad was in possession of said receivers, a half a million of dollars of the earnings of the road were expended in betterments to the road by the receivers, under the orders of said court. These betterments were made between the time when the road was placed in the hands of the receivers and the time when it was delivered to the purchaser.

In January, 1893, Frank Kelly, while in employment of the receiver Dillingham, as brakeman, was killed in a wreck upon said railroad, and in February of the same year the widow of said Kelly, Addie E. Kelly, instituted suit in the District Court of Washington County against said receiver and against the Houston & Texas Central Railway to recover damages for the death of her husband. Among other defenses interposed by said company to the plaintiff's demand, was the sale of the railroad and its properties and franchises under the decree of foreclosure rendered by the Circuit Court of the United States on the 4th of May, 1888, to Olcott, and the sale from Olcott to the said defendant; the defendant averring, that under the terms and conditions of the sale of said property as imposed by the said decree of foreclosure, the purchaser took the property freed from all such claims and demands as that made by the plaintiff. Upon trial of the cause a verdict and a judgment were rendered for the receiver; but a verdict and a judgment were rendered for the plaintiff against the defendant company for the sum of $7000; and from that judgment the defendant prosecutes this writ of error.

Numerous assignments of error are made to the judgment, but we shall notice but one of them.

The sixth assignment is in these words: "Because the court erred in refusing to give charge number 3, asked by defendant, which is as follows: 'The undisputed evidence shows that the defendant, The Houston & Texas Central Railroad Company, and all its rights and franchises, were sold to Frederic P. Olcott, and that said orders and decrees in said court conveyed the said property to the said Olcott without any incumbrances, and clear of all debts and incumbrances; and it further appearing that the United States Circuit Court for the Eastern District of Texas, at Galveston, had exclusive jurisdiction of said cause in equity number 198, styled Nelson S. Easton and James Rintoul, Trustees, and The Farmers' Loan and Trust Company, Trustee, v. The Houston & Texas Central Railway Company et al., and that all of the parties having claims against the property or funds in the hands of said court were required to intervene by petition in said cause on or before the 3rd day of October, 1893; and the evidence shows that the plaintiff in this cause did not intervene in said cause, and you will find a verdict for the defendant.'" This instruction

should have been given, and for the refusal of the court to do so, its judgment must be reversed and the cause remanded.

Under the general rules of law as administered in courts of equity, a railroad corporation is not liable for damages sustained by the negligence of a receiver while operating the road except when the road is returned without sale to its owner, with improvements made thereon by the receiver out of the earnings of the road while in his possession. If there be a sale of the property under decree of the court, the purchaser takes it, together with whatever improvements may have been made by the receiver, free from all charges or burdens except such as may have been imposed by the decree, or such as may have existed prior thereto. In the case of Railway v. Johnson, reported in 76 Texas and in 151 United States, and upon which appellee seems to rely, the property of the company was returned to it without sale, with large improvements made thereon by the receiver, and it was held by both the Supreme Court of Texas and the Supreme Court of the United States, that a recovery against the defendant company was right; and it is to be noted, that in the opinion delivered by each of these courts the fact that there was no sale of the property is emphasized. The Circuit Court, in which the receivership was pending, had exclusive jurisdiction of the property and assets of the railway company, and while the Act of Congress of 1887–1888 gives the right to any one aggrieved by a receiver to sue him in another court, without first obtaining permission from the court in which the receivership is pending, the act expressly provides that the latter court is not to be deprived of or impeded in the exercise of its equity jurisdiction; and in the proper exercise of its powers, the Circuit Court, by appropriate · orders and the customary notices, took steps to provide for the payment of all just claims against either the receiver of the road or its property, and required all persons having claims to present the same to that court within a reasonable time for adjudication; and to that court the plaintiff should have applied for compensation for the alleged injury received through the negligence of the receiver. Neither the Legislature nor the judiciary of a State can defeat or restrain the federal courts in the legitimate exercise of their jurisdiction. The Act of the Legislature of Texas of 1889, known as the "receivers' act," has no application to receivers appointed by the federal courts; and a judgment rendered by the State court against such receiver can not be executed by the State court, but must be referred for payment to the federal court in which the receivership is pending. Fordyce & Swanson, Receivers, v. DuBose, Supreme Court of Texas, upon certified quesions from the Court of Civil Appeals of the First Supreme Judicial District, 87 Texas, 78. The judgment rendered for plaintiff gave no lien upon the property of the railway. The Texas Act of 1889 makes the railroad company which has its property returned to it without sale by its receiver, and its assignee as well, regardless of the question of betterments, liable for the receiver's acts of negligence while operating·

the road. This is upon the theory that the receiver under such circumstances is the agent of the company. If then the plaintiff under proper pleading could show that the road was not in fact sold, but that Olcott, the ostensible purchaser, was but the agent of the company to receive its property from the receiver through the guise of a sale under judicial decree, then the question would arise, whether or not, under that act, the company would not be liable to plaintiff for damages resulting to her from the negligence of the receiver. The evidence, as we have seen, shows that a half a million dollars, taken from the earnings of the road, were expended in betterments by the receiver, but what portion of this sum was expended subsequent to the purchase of the property by Olcott does not appear. If the betterments made subsequent to the purchase, and earnings which may have been turned over to the purchaser, exceed in value and amount the liabilities imposed upon the purchaser by the decrees of the Circuit Court, it may be that a court of equity would hold the purchaser liable at least to such excess for the negligence of the receiver occurring subsequent to the sale of the property, since the earnings of the railway while in the hands of a receiver are regarded by the courts as a fund primarily subject to the payment of the expenses of the operating of the road, including both the contractual and tortious liabilities of the receiver. But this question we do not intend to decide; nor do the facts as presented to us raise either this or the question previously suggested in the opinion as to the probable liability of the company under the Act of 1889.

The evidence before us shows no right in the plaintiff to recover, and the judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*