## INTERNATIONAL–GREAT NORTHERN R. CO. v. OEHLER. (No. 2902.)

(Court of Civil Appeals of Texas. Texarkana. May 8, 1924. Rehearing Denied May 29, 1924.)

**1. Courts ⬯494—Federal court's refusal to restrain personal injury suit in county court showed that it had not reserved jurisdiction over it.**

Assuming that the federal District Court, in confirming sale of railroad property under a receivership, could reserve jurisdiction over personal injury suits filed against the company after foreclosure and delivery of the property, its subsequent order refusing to restrain prosecution of such suit in a county court showed that it did not do so.

**2. Railroads ⬯194(6)—Purchaser of railroad at receiver's sale assumed liability for personal injury claims accruing during receivership.**

Under Rev. St. art. 6624, allowing purchasers of railroad property at receivers' sales to operate under the old charter, on filing written assumption of "subsisting liabilities and claims for death and for personal injuries," a personal injury occurring during a receivership was included in the purchaser's liability, though the receivership ended in sale of the property, notwithstanding provision that such claims must accrue "within two years prior to the beginning of the receivership resulting in the sale."

**3. Railroads ⬯194(6)—Agreement of purchaser at receiver's sale to assume liability for personal injuries held to comply with statute.**

An agreement by a purchaser at receiver's sale of railroad property, "to take and hold the railroad property and franchises charged with, and subject to, all subsisting liabilities and claims for death and for personal injuries sustained in the operation of the railroad by the company and by any receiver thereof," etc., *held* to comply with Rev. St. art. 6624.

**4. Railroads ⬯194(1)—Purchaser at receiver's sale could not operate under old charter.**

In the absence of statutory authority, purchasers of railroad property under receiver's sale could not operate as a corporation without taking out new charter.

**5. Carriers ⬯346(3)—Evidence held not to show contributory negligence of passenger crossing tracks after alighting.**

In suit for personal injuries to a passenger, struck by engine while walking across the track at a crossing, after alighting, evidence *held* not to show contributory negligence as matter of law.

### On Motion for Rehearing.

**6. Railroads ⬯194(6)—Purchaser under foreclosure judgment takes property and franchises free from liabilities in absence of statutes.**

In the absence of legal requirement extending pre-existing liabilities of a sold out railway corporation, all claims against the property, except those secured by prior liens, and those provided for in the foreclosure judgment, are extinguished by the sale; the purchaser taking property and franchises free from liabilities.

**7. Railroads ⬯194(8)—Purchaser at receiver's sale not injured by personal judgment for personal injury occurring during receivership.**

Under Rev. St. art. 6624, requiring purchasers at receiver's sales of railroad property to file an assumption of subsisting liabilities before operating under the old charter, such purchaser takes as owner, not trustee, and is not injured by personal judgment on a personal injury claim accruing during a receivership, not exceeding the value of the property.

**8. Evidence ⬯18—Judicial knowledge that claims protected by statute against purchaser of railroad property are small when compared to value of property.**

The court judicially knows that the value of claims which Rev. St. art. 6624, undertakes to perpetuate and protect upon sale of railroad property is small, when compared with the value of railway property held subject to their payment.

**9. Courts ⬯500—Personal judgment against purchaser of railroad property held within jurisdiction of state court.**

In an action for personal injuries occurring during receivership of railroad against one purchasing the property at sale under decree of federal court, a judgment by its terms operating only against defendant's person or at most establishing amount and validity of the claim without directing payment out of any particular property, was within the jurisdiction of the state court.

Appeal from District Court, Anderson County; W. R. Bishop, Judge.

Action by J. C. Oehler against the International-Great Northern Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

S. B. Dabney and Walter F. Woodul, both of Houston, for appellant.

W. C. Campbell, of Palestine, H. S. Garrett, of Fort Worth, and White, Wilcox, Graves & Taylor, and Charles A. Wilcox, all of Austin, for appellee.

HODGES, J. In May, 1922, the appellee, J. C. Oehler, was struck and injured by an engine belonging to the International & Great Northern Railway Company, on one of the street crossings in the city of Palestine. At that time the railroad was in the hands of James A. Baker as receiver, appointed by the federal court for the Southern District of Texas. In July, 1922, the railway property, together with its charter and franchises, was sold under an order of foreclosure entered

in that court. The appellant, known as the International-Great Northern Railroad Company, acquired the charter, rights and franchises through the purchasers at that sale. while directing a delivery of the property to the purchasers, the federal court reserved jurisdiction to settle certain classes of claims and liabilities which arose during the receivership. This suit was filed by Oehler some time after the foreclosure and delivery of the property, against the International-Great Northern Railroad Company, to recover damages for the injuries sustained in the collision before mentioned. A trial before a jury resulted in a verdict and judgment in favor of the plaintiff below for the sum of $5,000, as damages and expenses incurred for medical treatment.

The evidence shows that after the purchase the appellant, in order to acquire the rights and franchises of the original corporators, filed a written instrument in the office of the secretary of state of Texas, as required by article 6624 of the Revised Civil Statutes, in which the appellant agreed, among other things, to "take and hold" the railway "property and franchises, charged with and subject to the payment of all subsisting liabilities and claims for death and for personal injuries sustained in the operation of the railroad by the company, and by any receiver thereof," etc. The liability of the appellant for a personal injury inflicted during the receivership is based upon that written agreement.

In this appeal three propositions are relied on for a reversal of the judgment: (1) That the state court was without jurisdiction to entertain this suit, because the claim sued on was one which had been reserved for adjudication by the federal court, in which the receivership had been pending; (2) that the statutory agreement filed by the appellant did not include claims for personal injuries occurring during a receivership which ended in a sale of the railway property; (3) that the appellee was guilty of contributory negligence, as a matter of law, and the jury should have been so instructed.

[1] The plea to the jurisdiction is based upon the following reservation of jurisdiction appearing in the order confirming the sale of the property:

"The court reserves jurisdiction over the property sold with reference to all claims against the sold out International & Great Northern Railway Company, which have been litigated or may hereafter be litigated in this or any court, so far as to enforce the payment of any judgments therefor out of the property sold, if the same be not paid within ninety days after the delivery of the deed herein provided for to the purchasers or their assignee, if such judgments are within the protection of the Revised Statutes, arts. 6624 and 6625, or either of such articles; and the payment thereof is hereby made a charge upon the property."

The record shows that after this suit was filed the appellant applied to Hon. J. C. Hutchison, judge of the United States District Court for the Southern District of Texas, for an injunction to restrain the appellee and his attorney from prosecuting this suit in the district court of Anderson county, where it had been filed. Upon the preliminary hearing on that application an order was entered refusing the writ except as to some unimportant details. The order, however, expressly refused to interfere with the prosecution of this suit in its present form, and provided that—

"They (the appellee and his attorney) may litigate and claim in the cause in the state court that the defendant International-Great Northern Railroad is liable for the damage, if any, by reason of said alleged tort, under the provisions of any contract, if any, made by its corporators or it under article 6624 of the Revised Statutes of Texas, and that the property of said railroad is liable therefor, or by any other reason not dependent on said decree or action of this court."

The amended petition discloses that this is a suit for a personal judgment against the appellant as the purchaser of the property, based upon an express assumption of certain liabilities of the receiver. It is not an action which undertakes to subject the property of the former corporation to the payment of the debt. Assuming that the federal District Court could reserve the exclusive right to try and determine a liability of this character, between the parties to this litigation, it appears from that court's own construction of its order that this was not done, nor was it attempted. H. & T. C. Ry. v. City of Ennis (Tex. Civ. App.) 201 S. W. 256.

[2-4] We pass, then, to the second proposition: In 1910 the Legislature amended what was then article 4549, but now article 6624, so as to read as follows:

Article 6624. "In case of the sale of the property and franchises of a railroad company, whether by virtue of an execution, order of sale, deed of trust, or any other power, or by a receiver acting under judgments heretofore or to be hereafter rendered by any court of competent jurisdiction, the purchaser or purchasers at such sale and associates, if any, shall acquire full title to such property and franchises, with full power to maintain and operate the railroad and other property incident to it, under the restrictions imposed by law; [hereafter addition of 1910] provided, however, that said purchaser or purchasers and associates, if any, shall not be deemed and taken to be the owners of the charter of the railroad company and corporators under the same, nor vested with the powers, rights, privileges and benefits of such charter ownership as if they were the original corporators of said company, unless the purchaser or purchasers and associates, if any, shall agree to take and hold said property and franchises, charged with and subject to the payment of all subsisting liabilities and claims for death

and for personal injuries sustained in the operation of the railroad by the company, and by any receiver thereof, and for loss of and damage to property sustained in the operation of the railroad by the company and by any receiver thereof, and for the current expenses of such operation, including labor, supplies and repairs; provided, that all such subsisting claims and liabilities shall have accrued within two years prior to the begnining of the receivership resulting in the sale of said property and franchises, or within two years prior to the sale, if said property and franchises be sold otherwise than under receivership proceedings; unless suit was pending on such claims and liabilities when the receiver was appointed or when the sale was made, in which event claims and liabilities on which suits were so pending shall be protected hereby as though accruing within the two years; such agreement to be evidenced by an instrument in writing signed and acknowledged by said purchaser or purchasers and associates, if any, and filed in the office of the secretary of state of the state of Texas; and, provided, further, that such charter, together with the powers, rights, privileges and benefits thereof, shall pass to said purchaser or purchasers and associates, if any, subject to the terms, provisions, restrictions and limitations imposed and to be imposed by law."

The proof shows that the written instrument filed with the secretary of state is as specific and as comprehensive as the statute requires. Counsel for the appellant contend that the statute quoted, and the written statement it provides for, are designed to include liabilities which accrue under receiverships which do not end in a sale of the railway property, and do not apply to those which result in a sale of the property. If that be the proper construction of the language of the law, then there is no liability shown in this case, and a judgment should have been entered for the appellant. But we find no warrant for such an interpretation. This statute was dealing with situations which resulted from a sale of railway property whether made under an execution, a deed of trust, an order of sale, or by any receiver acting under an order of a court. It undertakes to provide for passing on to the purchasers, and their associates, at any such sale the charter rights and franchises of the former corporators, thus dispensing with the legal necessity for taking out a new charter. In the absence of such statutory authority the purchasers of railway property could not operate as a corporation without taking out a new charter. 1 Elliott on Railroads, §§ 72 and 525a, and cases cited. Under our law, as it stood prior to 1910, purchasers of railway property at execution, or foreclosure, sales had authority to operate under the terms and provisions of the old charter, and no special conditions were attached to the acquisition of that right. Such purchasers took the property free from any liability except prior liens not

disposed of in the judicial proceedings resulting in the sale. H. & T. C. Ry. Co. v. Shirley, 54 Tex. 137, 138; Dillingham v. Kelly, 8 Tex. Civ. App. 113, 27 S. W. 806; Railway Co. v. Morris, 67 Tex. 700, 4 S. W. 156; G. C. & S. F. Ry. Co. v. Newell, 73 Tex. 338, 11 S. W. 342, 15 Am. St. Rep. 788. By the amendment added in 1910, which appears in article 6624, a condition was affixed to the legal acquisition of this right of purchasers to operate as a corporation without securing a new charter. That condition was that they should agree to hold the property and franchises "charged with and subject to the payment of all subsisting liabilities, and claims for death and for personal injuries sustained in the operation of the railroad by the company, and by any receiver thereof," etc. That language is broad enough to include all claims for such injuries against the sold out corporation, and all such claims against any receiver through whose hands the property had passed prior to the sale, whether the receivership resulted in a sale or not. The succeeding proviso, which counsel for appellant refers to as modifying and restricting that language, can logically be construed only as prescribing a period of limitation within which such claims must arise in order to become a part of the liability to be thus assumed. There does not appear to be any good reason why the Legislature should discriminate against claims arising under receiverships which terminated in a sale of the property. The manifest purpose of the amendment to the old law was to prevent the destruction of that class of claims by any reorganization effected through a judicial sale of the railway property. With that purpose in mind the Legislature would hardly undertake to make the discrimination insisted upon by counsel for appellant, without making that intention clearer than it now appears from the language used. The contention, we think, is untenable.

[5] We are also of the opinion that the evidence does not show, as a matter of law, that the appellee was guilty of contributory negligence. The accident occurred early in the morning, and appellee had alighted from a train upon which he had been a passenger. He had turned south on Magnolia avenue, and walked across the railway tracks on the west side of that street. He had gone as far as the last track on the south side, and then concluded to pass over to the east side and continue his journey home on that side of the avenue. The street crossing over the railroad, and for some distance to the south, had been closed to traffic by vehicles, and only pedestrians could use it. The ground had been dug up and the space filled in with rocks, both between the rails and in the intervening space between the tracks. The street was in the same condition for some distance south. Before starting from the west

to the east side of Magnolia avenue the appellee says he looked in front of him and he saw the locomotive and tender some distance away standing still. He then proceeded west between the rails, stepping on the ties because of the rough rock between them, with his eyes on the ground; and before he knew of its presence the engine and tender had backed down and ran over and injured him. He testified that he heard no bell ringing; that no warning was given; that he was taken completely by surprise. Several different issues of fact relating to negligence were submitted to the jury, and all of them found in the appellee's favor. Among those issues was that of contributory negligence. The evidence shows that the route the appellee was on was in constant use by many pedestrians every day. Doubtless his attention was diverted from the moving locomotive because of the necessity of picking his way over the ties.

We are of the opinion that the evidence supported the conclusion that the appellee was not guilty of contributory negligence.

The judgment will therefore be affirmed.

### On Motion for Rehearing.

[6] In disposing of this appeal the suit was treated as one for a personal judgment against the appellant; no effort appearing to fix any character of charge or lien upon the railway property. In the trial below a personal judgment was rendered in accordance with the pleadings of the plaintiff, and no special objection to that form of judgment was called to our attention in the original brief filed by counsel, or in the oral argument made in the case. But in the motion for a rehearing it is urged that under both the pleadings and the proof there was no personal liability on the part of the appellant for the claim sued on. Whether or not there was any basis for the rendition of a personal judgment depends upon the construction that should be given to article 6624, referred to in the original opinion. It is conceded that the agreement filed with the secretary of state is in the very language of that statute. Appellant contends, however, that the law undertakes to impose only a charge upon the property taken by the purchasers for the payment of the liabilities mentioned, and does not require them to personally assume the debts. In the absence of some legal requirement extending the pre-existing liabilities of a sold out railway corporation, all claims against the property, except those secured by prior liens and those provided for in the judgment of foreclosure, are extinguished by the sale, and the purchasers take the property and franchises of the former corporation free from any character of liability. H. & T. C. Ry. Co. v. Crawford, 88 Tex. 277, 31 S. W. 176, 28 L. R. A. 761, 53 Am. St. Rep. 752: G. C. & S. F. Ry. Co. v. Morris, 67 Tex. 692, 4

S. W. 156; Ry. Co. v. Harle, 101 Tex. 170, 105 S. W. 1107. But, in the language of the writing filed with the secretary of state, the purchasers whom the appellant succeeded agreed—

"to take and hold said property and franchises, charged with and subject to the payment of all subsisting liabilities and claims for, death and for personal injuries sustained in the operation of the railroad by the company, and by any receiver thereof," etc.

[7] The general rule seems to be this, where purchasers take property subject to a pre-existing lien, without a covenant assuming the mortgage debt, they are not personally liable in the sense that they may be held responsible for any deficiency beyond the value of the incumbered property in their hands. Belmont v. Coman, 22 N. Y. 438, 78 Am. Dec. 218, and notes; Klapworth v. Dressler, 13 N. J. Eq. 62, 78 Am. Dec. 69, and cases cited in notes; Heid v. Vreeland, 30 N. J. Eq. 591. In this case it is conceded that the statute does contemplate the imposition of a charge against the railway property which passed by the receiver's sale. It is probably true that in the enactment of this law the Legislature did not intend to impose upon purchasers who filed the agreement provided for, a personal liability that would extend beyond the value of the property taken over, and bind them to pay any deficiency that might result. But evidently the Legislature did intend to make such purchasers personally liable for claims less than the value of the incumbered property. In the case last referred to the court said:

"There can be no doubt at this day that where the purchaser of land incumbered by a mortgage, agrees to pay a particular sum as purchase money, and, on the execution of the contract of purchase, the amount of the mortgage is deducted from the consideration, and the land conveyed subject to the mortgage, that the purchaser is bound to pay the mortgage debt, whether he agreed to do so by express words or not. This obligation results necessarily from the very nature of the transaction. Having accepted the land subject to the mortgage, and kept back enough of the vendor's money to pay it, it is only common honesty that he should be required either to pay the mortgage or stand primarily liable for it. His retention of the vendor's money for the payment of the mortgage, imposes upon him the duty of protecting the vendor against the mortgage debt. This must be so even according to the lowest notions of justice, for it would seem to be almost intolerably unjust to permit him to keep back the vendor's money with the understanding that he would pay the vendor's debt, and still be free from all liability for a failure to apply the money according to his promise."

Language somewhat similar is used in Blood v. Levick Company, 171 Pa. 328, 33 Atl. 344.

When property is held subject to the "pay,

ment of a subsisting" claim, the liability constitutes a primary charge on the property. If there is no other person primarily bound for the payment of the claim, it then devolves upon the owner and holder of the property to either surrender a portion sufficient to satisfy the claim or to pay the debt out of other funds. If he refuses to pay the debt, or to turn over to the claimant enough of the incumbered property to be sold in order to raise the required funds, he has no right to complain at the rendition of a personal judgment against him for that amount. Under the law as it now exists the appellant, by the filing of the written agreement with the secretary of state, has acquired the original corporate franchise. Whatever legal existence the old corporation had which did not pass to the appellant has vanished. Railway Co. v. Harle, 101 Tex. 170, 105 S. W. 1107. This liability occurred while the property was under the control of the receiver, but the property has been sold and the receiver discharged. There is then no other person, or legal entity, whose duty it is or who can legally make the payment provided for by the statute. The appellant is not holding the property as a trustee, but as the owner, and is daily deriving a revenue from its operation. It is well settled that when railway property is returned by a receiver without sale, the owners take it charged with such debts as the receiver should have paid out of the earnings, if those earnings have been invested in betterments. T. P. Ry. Co. v. Johnson, 76 Tex. 421, 13 S. W. 463, 18 Am. St. Rep. 60; H. & T. C. Ry. Co. v. Crawford, supra. In such cases the charge upon the property becomes a personal liability of the owners. The "charge" which, under those conditions, imposes a personal liability upon the owners, is not legally different from the one provided for by article 6624, when the property passes into the hands of a new group of stockholders.

In Jones on Mortgages (6th Ed.) § 751, the author says:

"Whenever the mortgage debt forms a part of the consideration of the purchase, although the purchaser has not entered into any covenant, or agreement, to pay it, he is bound to the extent of the property to indemnify the grantor."

Numerous cases are referred to in the notes as supporting that rule. It can hardly be doubted that the charge imposed upon the property for claims arising during the operation of railroads by receivers was intended by the lawmakers as a part of the consideration to be paid by the purchasers who buy at such foreclosure sales. Presumably the amount of such claims, if known, or their probable amount, if unknown, is to be taken into account by the purchasers in making

their bids, and a corresponding deduction made. It then follows that, when such a claim is established and paid by the purchaser, he discharges an obligation which he impliedly assumed in taking over the property. He delivers to the claimant a sum of money that might otherwise have gone to the original owners, or to former creditors.

[8] A personal judgment for money can always be satisfied by the payment of money. Such a judgment against an owner holding property subject to forced sale does not become more burdensome than the legal establishment of a claim against the property except when the personal judgment exceeds the value of the property. As long as the owner can discharge the liability by selling the incumbered property, he sustains no injury by reason of the particular form of the judgment. The courts will judicially know that the value of the claims which this statute undertakes to perpetuate and protect is small when compared with the value of railway property held subject to their payment.

[9] In reply to the reiterated complaint that the trial court was without jurisdiction, we need only add that, since this judgment by its terms operates only against the person of the appellant, or at most establishes the amount and validity of a claim, without directing its payment out of any particular property, the plea to the jurisdiction was properly disposed of.

The motion will be overruled.